The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zienoff presiding. Good morning. This is case number 4-250139, People of the State of Illinois, Residence at 1303 Roncevalles Avenue and Roberta Duval. Would counsel for the appellant please identify yourself for the record? Good morning, Your Honor. Daniel Hanuska, H-A-N-U-S-K-A, for the appellant, Roberta Duval. Thank you. And counsel for the appellee? My name is Sherry Zak. I'm an assistant state's attorney for Winnebago County and I'm here for the plaintiff appellee. Thank you. At this time, Mr. Hanuska, you may begin your argument. Thank you. Good morning, Your Honors. Good morning, counsel. May it please the court. As I stated, I represent the claimant in this case, the appellant, Roberta Duval. This case relates to a bench trial ruling and an order entered by the court in January of 2025. The court ordered, following the bench trial, a forfeiture of a real estate property pursuant to the Drug Asset Forfeiture Procedure Act. That property that the court forfeited was owned by my client, Roberta Duval. Roberta is a retiree. She's a widow. And she purchased that property, the subject property, with her late husband that passed away a few weeks before closing on the property. Our position is that the trial court erred in three ways. Primarily, it's an Eighth Amendment argument that we're presenting. We're saying that the forfeiture of the property, which purchasing price, original purchasing price was $150,000, and obviously appreciated in value since then. But we're saying that the forfeiture of the property under Eighth Amendment analysis is excessive. It's disproportional. Our second point that we're making is that we're challenging the court's ruling that the claimant is not an innocent owner. We think that's against the manifest weight of the evidence. We think there's a lack of proof. There was certainly a lack of investigation by the investigating officers into the money trails. I just don't think that it's a reasonable, that the data reasonably supports the conclusion. And I'll get more into the facts as we go along. The third point that we're presenting to the court is that we're also challenging the trial court's ruling that the property was properly subject to forfeiture. We don't think that there was enough evidence to support the elements under G2 of the Drug Asset Forfeiture Procedure Act. And I can get into that again as we go along. Counselor, let me ask you a question about the second issue about innocent ownership. Under the statute as it exists now, meaning since 2018, innocent ownership is something that the claimant can assert pre-trial, correct? That's my understanding, yes. And if, let's say, you assert that and you lose, and it goes on to hearing, the statute basically says things go on according to the rest of the issues in the case. Since there was no motion filed here, isn't it accurate that there really is no innocent owner issue per se, although there are some common issues with innocent ownership in what the state has to prove at hearing? I think I understand Your Honor's question. Myself and my firm are handling the appeal. We weren't at the trial court level. But based on my understanding of the record, I guess from my perspective, the trial court did make the ruling. It is in the order. And I feel that, you know, because it's in the order he did make the ruling, that it's properly before the court. I don't see that there was any waiver issue there or anything of the sort. No, but for instance, under the innocent owner provision, which is for a pre-trial motion in hearing, it's the obligation of the claimant to show that that claimant was not legally accountable for conduct giving rise to the forfeiture or acquiesced in it. That's exactly like subparagraph A in the relevant statute on the merits. And then it talks about did not solicit, conspire or attempt. So even if there was no motion filed, those are issues that are part of the state's burden at hearing. And the concept of innocent ownership separate from that doesn't really make any sense at that point. I maybe struggle to understand the court's rationale there, but I think I get where it's getting at. You're saying that the factors, even if there wasn't a motion, the factors would still be at play at the trial. For the most part, right. And that it's the state's burden. There's not a separate issue of innocent ownership. It's that they are flip sides of the same issue. I think I agree with that. I'm somewhat related. So if we're talking about innocent ownership and your client's testimony that she knew nothing about what was going on, do we not have to consider this concept of willful blindness that we learned about in US v. 1, 1989, Jeep Wagoneer on 8th Circuit, 1992 case, where the supposed innocent owner deliberately closed their eyes so as not to be enlightened based on all of what, well, her testimony, the fact that she knew of his prior convictions, the text messages, all of that. I mean, couldn't the trial court correctly assume that at the very least she deliberately closed her eyes to what was going on at this particular address based on, of course, what we know at the 23rd Street address? Yeah. So I think my concern is that when the trial court was reviewing this and the trial was proceeding, there were text messages produced from mother to son, from Roberta to Kyle. And I think that there was at one point in the trial where there was a lot of, it was not specified as to when certain statements were made by Kyle to Roberta. And it had to take the defense counsel at the trial to point out that some of the comments were made after the arrest of Kyle. So in other words, the state was presenting to the trial court post-arrest statements between mother and son to show what she would have known before the arrest. And I think those are taken out of context by the trial court's interpretation of the text messages. Right. But I mean, we do know that she knew of his prior convictions. I believe she posted bond at one point. She arranged, supposedly, with her deceased husband to purchase this property so that he could start anew. So she wasn't completely ignorant of what his past was. And certainly some of these text messages indicate that he was pretty upset about and worried about the authorities finding out, certainly finding out about a fitness facility wouldn't be something one would be afraid of, would it? Well, again, I think that there's the interpretation of them in the greater context. And I understand, we got the record in front of us. That's what we have to look at. I understand that. And again, I think that under the context, we're in a situation where the mother, obviously, they care for their sons and they have to give their sons a place to stay. They're not just going to kick them out on the streets. And he was there in 2020. Now, there's a description in the record, Your Honor. I think the trial court judge believed that Kyle moved in in October of 2023, I believe. However, the testimony indicates that he moved in shortly after November of 2022. And so there was a long stretch of time where there was no issues. He was on probation. These were relating to marijuana, which is totally different than what was alleged to be found on a 23rd Street property. And of course, none of the stuff that was found at the 1303 Street property was related to prior, you know, was related to, I'll get into that in a minute. But essentially, what I'm seeing is that we have a situation where there's a landlord and a tenant situation here, but we also have a mother and son situation here. And I think it's very natural for a parent to be familiar with someone's prior history, whether or not they have to, whether or not she turned a blind eye. I just don't see that in the record from my perspective. I think that if we took blinders and looked at each text message, we can find suspicion, right? Anywhere, anyone's text message. In terms of the trial court's factual findings based on its assessment of the evidence, whether it's the statutory issue or the constitutional issue, we have to accept those findings unless they're against the manifest way to the evidence. Do you agree? I agree, but I would say that the Eighth Amendment argument is de novo. And I would point to that People v. 1, 2005 Acura RSX. But yeah, the factual findings, I know where the Okay. Thank you. Okay. Thank you, Your Honors. Yeah. So again, just getting back to the Eighth Amendment. So obviously, we got three options for the courts. And if the court wasn't inclined to see what I see in this case, I would recommend the Eighth Amendment option. And that's the argument, I think, I, for one, am most excited about. I think it's an ideal option, a route for the court, if, again, if it was inclined. I don't want to assume anything here. But I think it's not only the legally correct option to go, but I think it's a perfect, I will say, companion to that 2017 Fourth District case that I cite on page 16 of my brief, People v. 1, 2005 Acura RSX. I think it's an excellent companion. And it's not quite 10 years since that case, but that case, the court applied the Eighth Amendment factors to a set of facts. And it supported, it vindicated the claimant's rights. It's a claimant's rights case. Now, in that case, the court was analyzing real personal property, a vehicle. And my position is that this is an opportunity for the court to kind of rein in the state's power, at least within reason, to give clarity to attorneys, to give clarity to the prosecutors that, hey, there's a certain line that we cannot cross anymore. And this happens. The court, from time to time, will make these rulings. And this is a good time to address how real property operates within the forfeiture laws. And that's something that I don't think there's many cases that deal with, an innocent owner in the context of real property. And, you know, so in this case, you know, there's three factors that the Fourth District applied in People v. 1, 2005 Acura RSX. The court addressed the, applied the factors of the inherent gravity of the alleged offense compared with the harshness of the penalty. The court has addressed whether or not the property was integral to the commission of a crime. And whether or not the criminal activity involving the property is extensive in terms of its time and place in usage. So, you know, we're in a situation here where the claimant was not charged with any crime. The officers testified that they had no probable cause, the suspector of anything, or probable cause. It's basically the trial court had in front of them two officers testifying essentially that they don't think a reasonable person would ever have found wrongdoing of a crime. That's what the judge had in front of them during the testimony. So there was a lack of investigation. And I'll get into these facts a little bit more. But sticking with that Fourth District case, okay, so the court applied the four factors to People v. 1 Acura. There was, the claimant in that case was charged with felony theft. Okay, so the claimant was actually charged. He had attempted to commit burglaries. He was using the vehicle to transport burglary tools and transfer himself to three different burglary sites, two or three different burglary sites. And in applying the multi-factor test, the Fourth District found that seizing and forfeiting this man's vehicle was an excessive fine. And the value of what was allegedly, you know, stolen was inconsequential to the value of the vehicle. The court, important, to me this is important, the integral part, the factor about the integral part of commission of a crime. In Acura RSX, the court found that because the vehicle was not used as a means of transportation like in the sense of a DUI or a driving license suspended or fleeing the arrest, it was not considered integral part of the commission of the crime. And of course, the implication is that in this case, you know, Kyle needed a place to rest his head. Are we going to start forfeiting hotels that way? Well, but counsel, there was also evidence that there was some quantity of THC infused products. There was some packaging that was of the same type used for the products that were found at the other address. And there was evidence of actual drug sales at the property. So it wouldn't just be a place to rest his head. I think the evidence of drug sale, I didn't extrapolate that from the record personally, but I understand you're talking about the court's, you know, ruling. I think that a close and careful reading of the testimony and what was found at 1303 is kind of telling. So for instance, the trial court made comment that there was cannabis found at 1303. And the exhibits on the record on E-20, E-20 of the record describes what was found at 1303. And in my review of it, I see... Was that admitted into evidence? My understanding that it was, it's labeled as States Exhibit A in the record. My read, and I'll have to go back and review it, is that there was a States exhibit was not admitted as substantive evidence. And I was sort of left trying to understand whether we have any measure of what was found at the Ron Cevallos property. We do know what was found. We don't know how much was found. Yes. Well, again, according to this affidavit on E-20, and that's an affidavit from officer, detective jury, there's no mention of actual cannabis itself being found at 1303. And this is a theme that I think runs throughout the case. When I was looking at the pleadings, reading the trial transcripts, I think that there was always a conflation all along between what was found at the 23rd Street property and 1303. Throughout it, and there was a lack of precision and clarity. And I'm not going to say that that's intentional, but I think that that didn't help. And, but, you know, from my perspective is that under the Eighth Amendment factors, though, which I think is key here, you know, if the Fourth District found that vehicle... Just to get back to this, Exhibit A, the affidavit at E-20, the record reflects that that was not received in substantive, as substantive evidence. It was used to refresh a witness's recollection. So without that in evidence, I don't know that we have a, we have anything other than what jury testified to as to, as to what was found, and we have nothing as to how much was found. Which I think is relevant to your proportionality argument. We don't, we don't know the street value of what was found. We don't know the quantity of what was found. We don't really know much in terms of quantity at all. And I agree with your Honor. I think that, you know, for instance, also, you know, the detectives made admissions on the record saying that they never, they didn't take full investigations. They never investigated, you know, the extent to which there was alleged proceeds and profits from Kyle to Roberta. So that data was not in front of the judge. There was also a lack of investigation into the credit card issue of, you know, our position. And I think the trial court may have agreed with this, but that Kyle was using a credit card. Roberta was not the one ordering the materials. She might have been reimbursed for the materials, but she wasn't the one physically on there online searching everything, buying everything in most cases. And the officers admitted that they never did a full inquiry into where these orders were emanating from, from cell phones or computers. None of that forensics was done. So there was a lack of investigation, I think. And again, officers repeatedly testified that they did not have probable cause to suspect her of getting any drug proceeds, being involved in any sale of drugs, of being around any drug sales at 1303. She lived out of state. She never went to 1303 except to paint it. And even when she was there, she stayed at a hotel. So she was just there to support her son, to paint 1303, the interior. But there was no, like, living there in the state of Illinois. At all relevant times, she was out of state. And I do want to point out something else here, Your Honors. Yeah, so another point, this is kind of a side point, too, to make, but I do think that if we were to review the state's brief, response brief, I think that there's a lack of citation to the record. And I think that that's for a reason. I think that there's a lack of compliance to 341, Rule 341, that, and I would ask that unsupported claims be considered forfeit. So oftentimes, a state would be citing, for support, the trial court's order instead of citing to where in the record the data points are about, well, where were the drugs found? What investigation was done by the officers? What did Detective Castronovo say? What did a detective jury say? There was a lack of that. It was just basically citing the court's order as, but when you were supposed to be citing, showing the supportable facts that substantiate the conclusions. And I would ask, and that's my, our position is that would be, that there's an insufficient citation to the record. All right. Your time is up, Counsel. You will have time on rebuttal. Thank you. Ms. Zack. Good morning, Your Honors. I think we need to start at the beginning here. This investigation that led to the forfeiture action of the Ron Savellas property, the property at issue, as you know, began at a rental property that was located on 23rd Street in Rockford. That rental property was rented by the claimant. And as Counsel indicated, was never occupied by the claimant. It was rented solely for the purpose of her son. And that was in about 2020. Sometime in 2020, she signed that lease due to a neighbor contacting the police. They tipped them off that there was possible drug activity in that area. That prompted the police to do an investigation into the 23rd Street property. They were able to obtain a search warrant. And that's where they found, as you know, an enormous amount of drugs in the 23rd Street property. They also found $566 in U.S. currency. Can we focus, because we're aware of kind of the factual history that led to the Ron Savellas property, can we focus on what the evidence is as to the contraband at Ron Savellas and the illegal activity at Ron Savellas? Of course, Your Honor. The Ron Savellas property, after they obtained a search warrant, they found a lot of drugs at the Ron Savellas property. There was a list that I thought was attached to an affidavit that was submitted to the court. It was an affidavit that was prepared by Detective Castronovo. Right. That was attached to the probable cause affidavit at the outset of the case, correct? Okay. That was not introduced as evidence at the hearing. Okay. And then the jury affidavit, which was marked as Exhibit A, was specifically pointed out was not offered as substantive evidence. So we don't really have any measure of the amount of drugs that were found at Ron Savellas. Okay. So I guess I have a follow-up question to Justice Doherty's that I think goes together here. So if we're to assume, as he correctly, I believe, stated with respect to what was admitted and what wasn't. So we're left with maybe not specifics in terms of amounts or street value, but descriptions such as piles, multiple, a bunch describing the drugs, the paraphernalia. Is that sufficient here? Is that a sufficient description? Is that what you're asking me, Your Honor? Yes. If we're looking at the factors, the Zemiris factors in terms of whether the property was integrally part of the commission of the crime and measuring the three factors we need to. If we're looking at amounts and what may not be on the record, but what is in the record, is what is in the record sufficient? I can tell you that without going into specifics, that the amounts that were found at the Ron Savellas property were extremely large and extremely varied in different types of illegal drugs. But what in the record supports that? I believe it was in the record. It's just their testimony, is it not? It is their testimony. That's right. So is that sufficient? I believe it is because they're the ones that obtained and seized the drugs and they measured the amounts and tested them. So yes, I would believe that would be sufficient. That general description? Well, it would certainly make my life easier if it was more specific. But at this point, I believe these are seasoned detectives who would not take a seizure of a house lightly. It would have to be extreme in order for them to take such extreme measures. We're not reviewing them under a deferential standard. We're reviewing the trial court. And on the question of proportionality for constitutional purposes, we're looking at that It's very difficult to understand whether it is disproportionate to the offense that happened at Ron Savellas, meaning the amount of drugs, if we've got no measure of the amount of drugs. We also have no indication of the street value of the amount of drugs. So as we do this comparison between the two, we know what the fine is. It's $150,000. We just don't know what was the measure of the wrongdoing. Yes, Your Honor. And obviously, I cannot give you the specifics unless your honor wants them. But I can tell you a couple of things. And I don't know if your honors have decided whether this if the claimant is pursuing this as an innocent owner hearing or not. Well, why don't we pause on that? I want to ask you the same thing I did to the claimant's counsel. The statute says that if there's an innocent owner motion filed and it's denied, then we just go on to our hearing. And the fact that it was filed before doesn't change anything. At the hearing, there is no provision for a claimant burden of proof on innocent ownership. There is no separate finding on innocent ownership. And there's only the issues that are in some instances common to innocent ownership. But there's simply the issues that the state has the burden of proving. Doesn't the innocent ownership issue go away once we go to hearing? Pursuant to the statute, it does. And in addition, it also says if someone is pursuing an innocent owner hearing, the issue of how the property was seized and the whether or not she's an innocent owner. Correct. But there's no innocent owner issue at all, is what I'm saying. That's only something that happens if a party files a motion early in the case prior to hearing. But if there's no motion filed or if the motion fails, that whole concept of innocent owner just disappears. Now we just have what the state has to prove. It has to prove that the claimant was legally accountable or solicited, conspired, or got substantial proceeds. So those are common to the innocent owner issue. But there's no innocent owner issue per se at all once we go to hearing. If that's the case, Your Honor, then would the specific to the constitutional issue of whether the punishment, the fine, is disproportionate? Okay. And our position would be that would not be the primary reason in determining an eighth in our the eighth, whether or not it's an eighth amendment violation. And I only say that because I'm looking at the totality of the circumstances based on the claimant. It is the claimant who owned the property, not the drug dealer's son. And so we're looking at her action or inaction and determine whether or not the eighth amendment argument is relevant. And we're not looking to what happened at the other address, right? This is forfeiture based on what happened at the Ron Savalas address. We're looking at everything because she was involved, you know, our position is she was involved in his drug enterprise crossing three states from years. Okay. Well, well, wait. Years across three states? Yes. Because he was arrested in Wisconsin twice when he lived with her. Okay. But what does that have to do with her being involved? That's a real reach. Well, she was involved in that. She was involved in that. She posted bond for him. That doesn't make somebody counsel. Posting bond doesn't make somebody involved in an offense. Again, judges, one of the issues that I wanted to raise, there's other things that I wanted to present to the court here to look at the totality of the circumstances. Those text messages that were found after he was arrested in McHenry County clearly indicate that she knew and was part of his business. She set up an LLC for him. We'll go back to the LLC, but let me ask you this. If the evidence were that he conducted 100% of the illegal activity at the other address and literally just came home and rested his head at Ron Savalas, which isn't the facts here, but if that were the facts, there would be no basis to seize that property. Do you agree? Even if it wasn't full of drugs? Well, if it didn't have any drugs, there was no criminal activity at the property. That's correct. The only reason it was seized was because of that. Right. So we have to focus on the activity at that property. Do you agree? Right. In part, I don't completely agree. And I don't completely agree because we are talking about someone who's claiming to be an outside or an innocent owner. She didn't live there. She never lived there. Again, I don't think that her claim has anything to do with it. It's your burden to prove the elements under the statute. Right. Whether or not she's an innocent owner or knew about this property or the conduct at the property. I'm not getting through on that one. The innocent owner issue is a non-issue because that has to do with the motion raised pretrial. We're simply reviewing a decision made at the hearing, and you'll notice there's no issue about innocent ownership. There are things that relate to that, but there is no longer an innocent owner issue. Let me ask you about the LLC. LLCs can be used for legal purposes and illegal purposes, correct? Of course. Yes. Correct. What does the evidence show one way or the other as to what this LLC was used for in this case? It doesn't show that it was used for what they claim it was supposed to be used for. How do we know that? Because she testified to it. We asked her whether or not there was any indication or we asked the detectives if there was any indication in the rents of Ellis property whether or not there was anything to support his nutrition or physical training business, and there was nothing. At that address. We also don't know. I mean, the purpose of the LLC criminally, I assume, would be to launder money, right? We don't have any indication the LLC had money or had a bank account or had any records. We don't know anything about it. Well, we do know that there was a conversation between the claimant and her son regarding the LLC where he said, the feds are looking at me and I'll take the heat off if this LLC is formed. So we do have an indication there. And I would agree that there's some inference there that there was an intention that it might be used for that. My question is, was there any evidence it was ever actually used for that purpose? No, because he was already incarcerated when he was forcing her to finish preparing the LLC. With respect to. I think so, let me go back for a minute. I apologize for interrupting. I know we've spent some time on this trying to determine how we measure the proportionality. If we're going back to these Amiris factors and the 8th amendment argument. So I started out asking whether it was sufficient to have general descriptive terms for the LLC. And then I asked, would it make a difference if we were to use general descriptive terms, multiple bunch piles of things as opposed to specific amounts or street value? Would it make a difference if instead of describing what was found in piles, multiple or bunch, the description was a couple, a few, um, uh, minimum. In other words, indicating minimal rather than the terms, at least as I see them piles, multiple bunch indicates a large amount. Is that sufficient? I mean, are those descriptive terms as opposed to the large bunch piles? Sufficient when they are looked at with the opposite. Can we use those to determine proportionality as opposed to again, this is a follow up to justice stories question, or do we need in order to determine the proportionality here? Do we need the specifics? I think the specifics, of course, would be more helpful, but I think saying a bunch or something that does not indicate it was minimal. Would be sufficient. I mean, what was indicated in the record. Indicates while not going into specifics. Um, a large amount of illegal drug activity at that residence. And that should be enough. Can I ask you a question about the statutory basis for forfeit ability? 1st, under subsection a, that the claimant was legally accountable for the conduct. That is not a basis that the state argued. In its closing argument to the trial court, right? And the officers said there was no probable cause to charge her for anything. Do you agree? That's not a basis to uphold. The trial court's ruling we do agree. Okay. And then B, in terms of soliciting or conspiring is a conspiring that you're saying would maybe uphold. The statutory liability yes, we are focusing on conspiring. And see, and then in terms of substantial proceeds. Other than as an arm lengths transaction. The record would reflect that she received money that will, you could draw the inference was drug money. Drug proceeds for the son, but she didn't receive more than. Rent for the property or reimbursement for utilities or reimbursement for expenditures that were made on her car. Is that her card? Sorry? Is that is that fair? That's a correct statement, but I believe substantial is a subjective. Term, and I say that because I think the court needs to recognize that this was not. Rent to own. Situation this was a purchase. For her son to live in, and it was painful and she was receiving payments. For what she paid. So, it's more in the people's. Eyes, it's more like an investment property because she invested. In her son, he was making payments on it. The property was continuing to accrue. This was an investment that she chose to make for her son. So, but there's no evidence, for instance, that the rental rates were not. Reasonable and customary, no, there was discussed on the record, but there was no, it was discussed at trial, but there was no, nothing indicate anything that it was. Unreasonable given the area that the property is located and you are correct and staying that. Um, however, again, she is making money on practice and something. That's not she's not selling it to him. She's making money on it, but but that's the statue talks about. Other than as an interest holder in an arms length. Transaction isn't that a good description of paying rent? No, not when it's a mother and son, I would say no. That's more than I have a right to collect rent just because it's your son. No, she has a right to collect rent. I would say she's more than an arms like transaction. That's what I'm saying. Okay. I mean, I think this is something more than. Um, me renting from a landlord that I don't know. This is a situation much more personal, much more intimate than that. So I would say that it's not just an arm's length transaction. That's where I'm coming from your honor. Silence. May I continue? I'm sorry. I think you're in this situation. We have to look at the totality of the circumstances. We have to look at the actions and inactions. With respect to the rents of Ellis house, I know we're not talking about innocent ownership. But with respect to the 8th amendment argument, we have to look at all the facts of this case and the history of. The relationship between the claimant and her son. Now, the appellant has brought up that, you know, the mother should find a place for her child to raise your head. This is a person in his 30s. With a long criminal history of selling drugs. That she, and the facts indicated this in the record. Um, knew about and was involved in, um. So, when you know, forfeitures aren't taken lightly, the people don't take them lightly. The police don't take them lightly and certainly not with with real property, something this large. But the purpose of forfeiture is a consequence for behavior. And even though he has been in prison multiple times, and is currently incarcerated now. Um, prior to this incarceration, he just kept selling drugs. And she kept helping him. So, when. When the court considers whether or not this is a violation of 8th amendment. And the 8th amendment, this needs to be taken into consideration forfeitures are supposed to be a consequence to eliminate bad behavior, not just on the part. Of the person who committed the crime, but also the claimant who enabled him and continue to enable him up to this point. So, our people's position is that. While the innocent owner argument is out the window, she still was involved in this case. And, um, I think at this point, forfeiting that property is more than appropriate and it's not an 8th amendment violation that final argument. You've just made addressed a lot of things except for proportionality of the fine. I'm sorry you're on it. It's that what proportionality of the. Sanction yes. That's my, my point is, you just made sort of a. Compassion and closing argument or everything, and you're not addressing the fines proportionality with respect to. The value of. What was taking place allegedly in the house. Um, well, I can't go into specifics, but I can tell you that what was found in the house would be. Um, large enough for that we're forfeiting this property. Um, would be reasonable under the circumstances, but I think that's the point that the court has already sort of made and it's questions is that. You can't you can't make that statement because it's not an evidence. Well, what's in evidence is that there was what what. Just as enough said was, you know, there was a lot. It was more than just minimal and I think under the circumstances, taking everything into account while that may be a weaker point in the argument, taking everything in account. Um, clearly shows that the people's position. Is reasonable and the property should be forfeited. Thank you counsel at this time. Mr. you have time for your argument. Thank you, your honor. Yeah. So a few things I'd like to point out is that, um. Again, yeah, there was a lack of evidence presented about how much. Money was transferred from Kyle to Roberta. Um, as far as I'm concerned, I know some of the testimony that was in there. It just mirrors market based rents. I didn't see anything excessive on there. There certainly wasn't any investigation into any of that by the officers. I think they essentially admitted that there was no investigation to the finances. And so there's a lack of data presented to the trial court on that point. I think that. I think another point again, the state plaintiff makes a lot of contentions here, but again, they don't cite to the record. And I think that's a valid point to make. Is that there's a lack of citation and the reason why the state keeps citing to the trial court's order is because they can't find anything. Decide to there's there's too much vaguety. There's too much. Inflation between what's that 23rd street in 1303. And I think that that's reveal as to why we're having issues trying to find out, we'll get specifics. Why are they just referencing a large amount of drugs? What does that even mean? It's kind of relative. Another point, too, I think is worth making is that. Counsel was referencing the fact that she was giving him a place to stay knowing his past history. Well, we could look at it in this. In this way as well, is that if she did find evidence of something, she would still have to go through the eviction process. He's a tenant, so there would be a delay in that. Um, that's that's a point I think worth making as well. Um, if she did not want him at the property, if she wanted to stop what was going on, she couldn't just instantly do it. She had to follow. She would have to follow eviction processes, which just don't happen overnight. But again, you know, counsel's point about, you know, helping impose bail prior cases that happened years before, which were only marijuana offenses. Nothing nothing of the level of fentanyl or anything like that. You know, there's an incidental proven guilty. Why would a mother not bail out her son? Why would that be a sign of somebody? Trying to help a drug organization maintain itself. I just don't see how. A mother helping her son, I mean, I don't have kids, but I imagine everyone I talked to, they would never let their kid go without a place at least to sleep at night. So, I think that that, you know, in the totality of everything. It's just we would, you know, when you give someone a hammer, everything looks like a nail. We've heard that before. I think that's what we have here. You know, the state people, the forfeiture power, there's certain policies in different departments and they just keep going and going until the courts kind of like give a barrier and say, hey, you know what, you're going a little bit too far here. Tone it down. And I think that's what we have here. Again, I'm not attacking anybody. I'm just saying generally people get used to certain things, desensitization to the forfeiture power. And if we know the case law forfeiture, every single case, the case is mentioning how their forfeiture is disfavored at law. And I think the trial court did not sufficiently address certain factors or certain presumptions that we do when we do an Eighth Amendment analysis. So, for instance, if the claimant was never charged with a crime, then the gravity of the claimant's conduct decreases in each situation under the factors. That's my understanding of how the law operates. And I don't feel that the court's decision sufficiently reflected that the claimant was never charged with a crime and applied that decreased gravity of her conduct. And really she had no conduct at the end of the day. You know, while the officers in the state deal with alleged drug dealers all the time, it doesn't mean that the mother knows all this drug lingo or has suspicions. You know, she's going to trust her son to a certain degree. But another point I think worth making here is that when we look at the inherent gravity, the harshness of the penalty against the fine imposed, okay, the court is to consider intangible values too. So, one can make the argument that, you know, this property that was purchased with her late husband, who passed on weeks before the closing, there's some sentimentality there. I know that some people might look at it as investment property, but I think that there's some intangibles there that the court did not also look at, that it's not just about the monetary value. Well, counsel, if I can interrupt, I mean, that has no amount. How do we measure that? Even if we look at this de novo, we're back to where we started when we were talking all about the fact that the record doesn't contain any specifics with regard to amount. So, I'm not sure how we would measure that. I understand. I understand. Well, going back to that 1st point. You want to just wrap up if you have another sentence. I just wanted to reiterate that point about that, that there's the gravity of the offense of the alleged conduct is kind of mitigated under the RSX case when there's no charge of a crime against the claimant. Thank you. All right. Thank you very much, counsel, both of you for your arguments today. The court will take the matter for advisement and render a decision in due course. Court is adjourned for the day.